UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER P. HANNEY,

     Applicant,

v.                                         CASE NO. 8:22-cv-2026-SDM-AAP

SECRETARY, Department of Corrections,

     Respondent.

_____/

## **ORDER**

     Hanney applies (Doc. 1) under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges his convictions for attempted murder in the first degree, arson involving a dwelling, and aggravated battery with both a deadly weapon and great bodily harm, for which Hanney is imprisoned for life.  Numerous exhibits ("Respondent's Exhibit") support the response.  (Doc. 12)  The respondent admits the application's timeliness (Doc. 12 at 18) but argues both that some grounds are procedurally barred from federal review and the remaining grounds lack merit.

### I.    **BACKGROUND**[1]

     Hanney and his second wife (the victim of his crimes) were pursuing a divorce; they agreed that Hanney would remain in his house, that Hanney would

_____

[1] This summary of the facts derives from the briefs on direct appeal. (Respondent's Exhibits 10 and 11)

give the victim money both to rent an apartment with their two sons and to purchase furniture, and that the victim would retain the ability to access the house. In November 2009 the victim advised Hanney of her intent to access the house. Because Hanney parked his car a "ten-minute-walk" away from the house on the day of the planned visit, the victim believed that Hanney was not home when she arrived. Upon entering the home, the victim encountered Hanney, who was naked and holding a butcher knife. Hanney overpowered her and took her into the garage where he attempted to anally sexually assault her, hit her in the head four times with a hammer, doused her with gasoline, and set her aflame with a lit candle. When both she and the garage "went up in flames," the victim managed to escape through a garage door at the front of the house and rolled in the grass to extinguish the fire. A neighbor (who was an off-duty deputy sheriff) aided the victim and took the victim into the neighbor's house for a shower. The victim required a medically induced coma for more than a month, seven surgeries, and three months in the hospital.

Seeing the house engulfed in flames, a nearby landscaper rushed to assist Hanney, who was standing in the doorway at the back of the house. After the man assisted Hanney away from the house, Hanney asked "Is the bitch dead?" and "Did I kill the bitch?" (Respondent's Exhibit 3 at 445) When the deputy sheriff arrived on the scene and spoke with both the victim and Hanney, the victim told the deputy that Hanney had "poured lighter fluid on me and set me on fire" and Hanney told the deputy both that "I set her on fire" and that he had cut his own neck and wrist. (Respondent's Exhibit 3 at 478–79, 481, and 493) Later, Hanney told the hospital

chaplain that "he wanted to end his life and the life of his partner . . . ." (Respondent's Exhibit 3 at 1059)

By convicting Hanney of the charged offenses of attempted murder in the first degree, arson involving a dwelling, and aggravated battery with both a deadly weapon and great bodily harm, the jury necessarily rejected Hanney's defense (1) that inside the main part of the house the victim had retrieved a knife from the kitchen and her masked male accomplice hit Hanney in the head and (2) that inside the garage (a) he swung a hammer at the accomplice but instead hit the victim; (b) the accomplice stabbed him in the stomach, pointed a firearm at him and "zip-tied" him to a chair; (c) the victim brought into the garage a lit candle and a plastic soda bottle that contained a liquid; and (d) he started kicking at the victim, who suddenly "went up in a fire ball."  (Respondent's Exhibit 3 at 953)

## II.  **EXHAUSTION AND PROCEDURAL DEFAULT**

The respondent argues that Hanney procedurally defaulted some grounds by failing to fully exhaust his available state court remedies.  An applicant must present each claim to a state court before presenting the claim to a federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving

those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*).

### Grounds One through Four and Thirteen

These five grounds allege claims of ineffective assistance of trial counsel that Hanney admittedly failed to present to the state courts. Although each of these grounds is unexhausted, Hanney asserts entitlement to review of the merits of each ground under an exception to the exhaustion requirement established by *Martinez v. Ryan*, 566 U.S. 1 (2012). This exception applies only if (1) a state requires a prisoner to raise a claim of ineffective assistance of trial counsel in an initial review collateral proceeding, (2) the prisoner failed to properly raise the ineffective assistance of trial counsel claim in his state initial review collateral proceeding, (3) the prisoner did not have collateral counsel or his collateral counsel was ineffective, and (4) the failure to excuse the procedural default would result in the loss of a "substantial" claim of ineffective assistance of trial counsel, which claim is characterized as having "some merit." *Martinez*, 566 U.S. at 14. Because a court must to some degree consider the merits of each unexhausted claim, these five grounds are addressed later after the exhausted claims of ineffective assistance of trial counsel (Grounds Five through Seven and Nine through Twelve) are addressed on the merits.

**Ground Eight:**

Hanney alleges that trial counsel rendered ineffective assistance by failing to move to withdraw based on a conflict of interest caused by counsel's expressing to Hanney her belief that he was guilty.  Hanney alleged this ground as ground five in his original motion for post-conviction relief, which the state court summarily denied (Respondent's Exhibit 27 at 15–17) finding that Hanney had abandoned the issue during a pre-trial motion to terminate counsel when Hanney stated that he wanted counsel to continue to represent him.  Hanney's initial brief  (Respondent's Exhibit 44) on appeal from the denial of post-conviction relief shows that the respondent correctly argues that Hanney omitted this claim on appeal.  The exhaustion requirement is not met if a defendant fails to "fairly present" a claim to the state courts by not briefing the claim in his initial brief.  *See Reese*, 541 U.S. at 32;  *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").  State procedural rules preclude Hanney from returning to state court to present his federal claim in a second, untimely direct appeal.  *See* Fla. R. App. P. 9.140(b)(3).  Hanney's failure to properly present his federal claim in the state court

results in a procedural default. *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

As determined above, Hanney procedurally defaulted Ground Eight by not briefing this claim on appeal from the denial of post-conviction relief. As a consequence, the ground is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 747–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To meet the fundamental miscarriage of justice exception, Hanney must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he

did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause). Hanney establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, Ground Eight is procedurally barred from federal review and not entitled to a determination on the merits.

## III.   STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was

contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "To meet that standard, a prisoner must show far more than that the state court's decision was 'merely wrong' or 'even clear error.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of ' those

holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through'

the unexplained decision to the last related state-court decision that does provide a
relevant rationale [and] presume that the unexplained decision adopted the same
reasoning." *Wilson,* 584 U.S. at 125.  The State may contest "the presumption by
showing that the unexplained affirmance relied or most likely did rely on different
grounds than the lower state court's decision . . . ." *Wilson,* 584 U.S. at 125.

In a *per curiam* decision without a written opinion the state appellate court on
direct appeal affirmed Hanney's convictions and sentence.  (Respondent's Exhibit
13)  Similarly, in another *per curiam* decision without a written opinion, the state
appellate court affirmed the denial of Hanney's Rule 3.850 motion for
post-conviction relief.  (Respondent's Exhibit 46)  The state appellate court's *per
curiam* affirmances warrant deference under Section 2254(d)(1) because "the
summary nature of a state court's decision does not lessen the deference that it is
due."  *Wright v. Sec., Dep't of Corr.,* 278 F.3d 1245, 1254 (11th Cir. 2002); *see also
Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court
and the state court has denied relief, it may be presumed that the state court
adjudicated the claim on the merits in the absence of any indication or state-law
procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F. 3d 1243,
1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or
"analysis" and a "decision" or "ruling" and explaining that deference is accorded the
state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is
limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record
> in existence at that same time, i.e., the record before the state
> court.

Hanney bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of Hanney's claims warrants deference in this federal action. (Respondent's Exhibits 29 and 37)

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Hanney claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim, as *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains:

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

An applicant must prove both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Hanney must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 690.  To meet this burden, Hanney must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  *See Pye v. Warden, Ga. Diagnostic Prison*, 50 F. 4th 1025, 1041–42 (11th Cir. 2022) (*en banc*) (brackets original) ("Applying AEDPA to *Strickland*'s prejudice standard, we must decide whether the state court's conclusion that [counsel's] performance . . . didn't prejudice [petitioner] — that there was no substantial likelihood of a different result — was so obviously wrong that its error lies beyond any possibility for fairminded disagreement.") (internal quotation marks omitted).

Under Section 2254(d), Hanney must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. at 739 ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel

performed adequately."); *Pinholster*, 563 U.S. 202 (An applicant  must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").  "And in reviewing the work of their peers, federal judges must begin with the 'presumption that state courts know and follow the law.'  Or, in more concrete terms, a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Reeves*, 594 U.S. at 739–40 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002), and *Richter*, 562 U.S. at 101) (italics and brackets original).

During Hanney's post-conviction proceedings, the state court summarily denied a ground of ineffective assistance of trial counsel without an evidentiary hearing and denied the other grounds after conducting an evidentiary hearing.  In both orders the state court correctly recognized that *Strickland* governs a claim of ineffective assistance of counsel.  (Respondent's Exhibits 29 and 37)  Consequently, Hanney cannot meet the "contrary to" test in Section 2254(d)(1).  Hanney instead

must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not to independently assess whether counsel's actions were reasonable.  *Putman v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## A.  IAC During Pre-Trial

**Ground Five:**

  Hanney alleges that trial counsel rendered ineffective assistance by not moving to suppress the victim's allegation that he attempted to rape her.  After holding an evidentiary hearing on this claim, the post-conviction court's order first reviews the testimony from the evidentiary hearing (Respondent's Exhibit 37 at 20–21) (references to record omitted) (brackets original):

> Defendant alleged the victim's testimony regarding the attempted rape was "highly inflammatory" and that Counsel should have "filed a motion in limine to prevent any mention of a crime that was never charged and where there was no proof it ever occurred." Defendant alleged that had Counsel filed this motion in limine, there is a reasonable probability the court would have granted the motion, prevented the victim from testifying about the attempted rape. Defendant alleged "the jury reached their verdict because of a false perception acquired from the false and inadmissible accusation of [the victim]" and "[t]here is a reasonable probability that had [Counsel] filed a motion in limine, [Defendant] would not have been convicted and would have been acquitted at trial."
>
> At the January 8, 2020 hearing, Counsel testified that she did not file a motion in limine to preclude testimony from the

victim regarding Defendant's alleged attempt to rape her during the course of the incident. Counsel testified that she did not file such a motion "[b]ecause it would have been viewed as inextricably intertwined with the incident itself." Counsel testified that she saw filing that motion in limine resulting in one of two outcomes: (1) the State choosing to charge the rape, or (2) the State arguing that it was inextricably intertwined with the charges. Counsel testified that "[e]ither way, [the testimony] would be coming in."

Additionally, trial counsel testified that part of her reasoning for not objecting was her belief that Hanney could benefit from the testimony (Respondent's Exhibit 34 at 177):

I thought that maybe there would be a benefit to the fact that [the victim was] trying to make this more egregious and the state didn't file those charges.

Either way, it would be coming in. So to me, you're not going to win that and there's at least some kind of benefit that the jury hears that, well, he's not charged with that. You know, why is he not charged with that when she's saying that happened.

The post-conviction court ruled that Hanney proved neither deficient performance nor prejudice (Respondent's Exhibit 37 at 21):

[T]he Court finds Defendant has failed to establish that Counsel's performance was ineffective because he failed to prove Counsel acted deficiently or that Counsel's actions resulted in any prejudice. With regards to the decision to not file a motion in limine to exclude testimony from the victim regarding Defendant's attempt to rape her, the Court finds Counsel's testimony credible and finds Counsel made a reasonable strategic decision, one that as Defendant's attorney, she was entitled to make. Such a decision by a defendant's attorney does [not] amount to ineffective representation.

The state court ruled that Hanney proved neither deficient performance nor prejudice and that trial counsel's not moving to suppress the victim's allegation that Hanney attempted to rape her was a reasonable strategic decision. A federal habeas

corpus action authorizes a determination of only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent determination of whether counsel's actions were reasonable. *Putnam*, 268 F.3d at 1244, n.17. The post-conviction court's findings and determination are both supported by the state court record and facially reasonable. Hanney fails to meet his burden under Section 2254(d) to show that the state court's decision was either an unreasonable application of clearly established Federal law or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Consequently, Ground Five lacks merit.

**Ground Six:**

Hanney alleges that trial counsel rendered ineffective assistance by not deposing and calling as defense witnesses his ex-wife (Luz Hanney) and their daughter (Angelie Hanney) to present evidence of the victim's propensity for violence. After holding an evidentiary hearing on this claim, the post-conviction court denied relief (Respondent's Exhibit 37 at 10–11) (references to record omitted) (brackets original):

> Counsel testified that she spoke with Luz Hanney, who told her that during her marriage to Defendant there had been no domestic violence. Counsel testified that Luz Hanney "didn't say that there was any kind of physical abuse," and never told her anything about witnessing any violence or acts of aggression. Further, Counsel testified that she spoke to Defendant about domestic violence and he always denied it and said nothing about the victim being violent towards him. Counsel also testified that she had no notes regarding the victim's mental instability, Defendant never asked her to look into the victim's mental instability, and Defendant never said anything that gave her any reason to.

> The Court finds that . . . Defendant has failed to establish that Counsel's performance was ineffective as he failed to prove Counsel acted deficiently or that Counsel's actions resulted in any prejudice. With regards to the allegation Counsel failed to sufficiently investigate the victim's background, the Court finds the claim to be without merit. The Court further finds that there does not appear to be any mental instability or history of violence by the victim that would have led to some other legal relief for Defendant. The only evidence regarding the victim's history and tendency towards violence presented during the hearing was testimony from Angelie Hanney, Luz Hanney, and Defendant himself. Angelie Hanney and Luz Hanney's testimony consisted of anecdotes about minor incidents and conflicts between the victim and Defendant, not of violence. The Court finds the witnesses did not testify to the sort of violence that, even if Counsel was aware of before trial, would have made a difference in the trial's results. The Court finds Counsel was credible, and nothing presented by Defendant during the evidentiary hearing indicated otherwise. There is nothing in the record indicating Counsel overlooked information that was available or readily discoverable upon appropriate investigation that the victim was prone to violence. The Court finds there are simply no facts to support this claim.

The post-conviction court's findings are supported by the state court record and the ruling is consistent with federal precedent. *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. *See Chandler v. United States*, 218 F.3d 1305, 1318 n.23 (11th Cir. 2000) ("Requiring that counsel always do certain acts to be found effective (for example, interviewing some of petitioner's neighbors for mitigation evidence) would contravene the Supreme Court's directive that no set of detailed rules for counsel's

conduct should be used to evaluate ineffectiveness claims.").  Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness or defense to present.  *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (internal quotation omitted); W*aters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (*en banc*); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). *See McDonald v. Sec'y, Dep't of Corr.*, 578 F. App'x 921, 925 (11th Cir. 2014) (quoting *Blanco*); *Cook v. Warden, Ga. Diagnostic Prison*, 677 F.3d 1133, 1137 (11th Cir. 2012) (quoting *Waters*).  Additionally, *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains that Hanney cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

Consequently, Ground Six lacks merit.

**Ground Seven :**

Hanney alleges that trial counsel rendered ineffective assistance by not calling

an expert witness to testify that no trace of gasoline was discovered on his clothing.

This claim is slightly different from the claim he presented in state court, where he

faulted trial counsel for not having the clothing tested for the presence of gasoline.

Review of this ground is limited to the claim Hanney exhausted in state court

because the present variant is unexhausted.  The post-conviction court summarily

denied relief with the following findings and analysis (Respondent's Exhibit 31

at 6–8):

> Defendant alleges that counsel rendered ineffective assistance
> of counsel by failing to investigate whether the clothing he was
> wearing at the time of the offense contained trace amounts of
> gasoline. Defendant alleges that the State's theory of
> prosecution was that Defendant intentionally set the home on
> fire by splashing and igniting gasoline in the residence.
> Defendant alleges that this accusation was known by counsel
> prior to trial through the normal discovery processes.
> Defendant alleges that in closing argument, counsel argued that
> state officials failed to examine Defendant's van, which
> presumably was used to retrieve and transport the gasoline, and
> the clothing that Defendant was wearing at the time he
> allegedly started the fires. Defendant alleges that he specifically
> informed counsel that he did not retrieve any gasoline and carry
> it in his van, nor did he splash gasoline in the home and ignite
> any fires. Defendant alleges that he was confident that had his
> clothing been tested, there would be no traces of gasoline
> found.
>
> Defendant alleges that the presence of gasoline on his clothing
> would have been a clear indication that he committed the act of
> arson as accused by the State, and there is no doubt such
> evidence would have been used by the State as circumstantial
> evidence against him. Defendant alleges, therefore, that the lack
> of trace amounts of gasoline is a persuasive indication that he
> did not splash gasoline as alleged by the State. Defendant
> alleges that immediately after the offense, there were multiple

witnesses who assisted him, and not one witness even suggested
that Defendant smelled of gasoline, as would have been
expected had he splashed gasoline in multiple areas of his
home.

Defendant alleges that investigating the presence or absence of
trace amounts of gasoline in his clothing was a critical point
where the State's theory could have been put to a proper
adversarial test. Defendant alleges that the lack of investigation
into such a key area is unprofessional error, and without this
evidence, the jury was left with the weight of the testimony of
state officials with regard to the presence of gasoline being
splashed in multiple areas of the home. Defendant alleges that
there is a reasonable probability that a competent jurist would
have found Defendant not guilty had counsel investigated
properly.

Upon review, the Court finds that no relief is warranted . . .
because Defendant is unable to demonstrate the necessary
prejudice under *Strickland*. Specifically, the Court finds that
even if counsel had investigated Defendant's clothing and
found that the clothing did not contain trace amounts of
gasoline, this fact would not tend to prove or disprove that
Defendant committed the offense(s). *See Galloway v. State*, 802
So. 2d 1173, 1175 (Fla. lst DCA 2001) (finding that the absence
of DNA at the scene of the crime would not demonstrate that
the defendant was not present and participating); *Scott v. State*,
46 So. 3d 529, 534 (Fla. 2009) (concluding that it did not make
a difference in the case whether the defendant's blood was
present at the crime scene) (citing *Hitchcock*, 866 So. 2d at 27).
As such, even if counsel had investigated the clothing,
Defendant is unable to demonstrate that there is a reasonable
likelihood that the outcome of the proceedings would have
been different.

The state court determined that Hanney failed to show the requisite prejudice

under *Strickland* because the proposed evidence would neither prove nor disprove the

conclusion that would be inferred from an expert witness's testimony. The post-

conviction court's findings are supported by the state court record and the ruling is

consistent with federal precent.  For example, *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), discusses the required extent of counsel's investigation:

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

And as *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (italics original), explains, deference is to both counsel's and the state court's decisions, recognizing that counsel decides strategic options based on both limited resources and limited time.

> [W]e owe deference to both Reeves' counsel *and* the state court. As to counsel, we have often explained that strategic decisions — including whether to hire an expert — are entitled to a "strong presumption" of reasonableness. *Harrington v. Richter*, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Defense lawyers have "limited" time and resources, and so must choose from among " 'countless' " strategic options. *Id.*, at 106–107, 131 S. Ct. 770. Such decisions are particularly difficult because certain tactics carry the risk of "harm[ing] the defense" by undermining credibility with the jury or distracting from more important issues. *Id.*, at 108, 131 S. Ct. 770.

Consequently, Ground Seven lacks merit.

## Ground Nine:

Hanney alleges that trial counsel rendered ineffective assistance by not filing a motion asserting immunity from prosecution under Florida's "Stand Your Ground"

law.  After holding an evidentiary hearing on this claim, the post-conviction court

denied relief with the following findings and analysis (Respondent's Exhibit 37 at

7–8) (references to record omitted):

> Counsel testified that she and Defendant never discussed a motion to dismiss based on self-defense. Counsel testified that based on her conversations with Defendant, she understood his version of what happened during the incident to be "kind of an accident, kind of self-defense." However, as time went on, Counsel testified that Defendant's version of events changed.

> Counsel also testified that at the time of Defendant's case, the burden for a Stand Your Ground motion to dismiss was different, meaning Defendant would have had the burden to support his case, which would require him to testify. Counsel testified she did not think this was a wise strategic choice because having Defendant testify at a hearing would alert the State to what they would need to investigate prior to trial regarding Defendant's version of events. Additionally, Counsel testified she did not think the motion would be granted.

> [T]he Court finds that . . . Defendant has failed to establish that trial counsel's performance was ineffective. The Court notes there is a strong presumption that trial counsel's performance was not ineffective. *See Strickland*, 466 U.S. at 690. Further, the defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might' be considered sound trial strategy." (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000).

> With regards to the decision to not file a motion to dismiss based on the Stand Your Ground defense, the Court finds that Defendant failed to prove that Counsel acted deficiently when Counsel made a reasonable strategic decision, one that defense counsel is entitled to make. The Court finds Counsel's testimony credible. The Court further finds that Counsel made her decision based on the case law in existence in 2010, 2011, and 2012, and that this case law required Defendant to carry the burden. Accordingly, the Court finds that Counsel made her decision to not file a motion to dismiss in an effort to

protect Defendant, and that this decision was based on a reasonable strategy. Accordingly, this decision does not amount to ineffective representation.

The state court determined that Hanney failed to show that counsel's not moving to dismiss was deficient performance under *Strickland*. The state court accepted trial counsel's testimony over that of Hanney. Under 28 U.S.C. § 2254(e)(1), a federal court must defer to the state court's findings of fact.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

This deference applies to a credibility determination that resolves conflicting testimony, as *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998), instructs:

> We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]. *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), *cert. denied*, 516 U.S. 1122 (1996).

The deference is heightened when reviewing a credibility determination in a Section 2254 application. *Consalvo v. Sec'y, Dep't of Corr.*, 664 F. 3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review."); *Gore v. Sec'y, Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007). *Accord Kurtz v. Warden, Calhoun State Prison*, 541 F. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always

given to a trial court's credibility determinations,' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*).

The state court found that trial counsel chose, as a matter of trial strategy, to not disclose to the prosecution Hanney's version of events.  Counsel's reliance on a particular defense is "a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000).  "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998).  The post-conviction court's determination of no deficient performance is a reasonable application of *Strickland*.  Consequently, Ground Nine lacks merit.

**<u>Ground Eleven:</u>**

Hanney alleges that trial counsel rendered ineffective assistance by not moving for a bench trial.  After holding an evidentiary hearing on this claim, the post-conviction court denied relief with the following findings and analysis (Respondent's Exhibit 37 at 17–18) (references to record omitted) (brackets original):

> At the hearing, Counsel testified Defendant never asked for a bench trial. Further, Counsel testified that in her professional judgment, a bench trial would not have been appropriate in Defendant's case. In her testimony, Counsel stated that there is "too much of a substantial constitutional issue" for a motion for a bench trial to have been successful in this case. Counsel further testified that in cases like Defendant's, "[y]ou'd rather have jurors," and that she "definitely would not have gone bench in front of Judge Battles" because the risk to Defendant would have been very great.

> The Court notes that holding a bench trial would require a waiver of Defendant's right to a trial by jury, the State to agree to the waiver, and the Court would have to approve of the waiver. The Court finds that Counsel's decision to not move for a bench trial was a strategic decision, which as Defendant's attorney, she was entitled to make. The Court finds Counsel's testimony that Defendant never asked for a bench trial credible, and therefore this claim lacks merit. However, assuming *arguendo* that Defendant did ask for a bench trial, Counsel's assessment that a bench trial was inappropriate for Defendant's case was reasonable. The Court finds that this relief was unlikely to occur because constitutional rights were involved and Counsel exercised her position as Defendant's attorney to determine that a jury trial was a better strategy to pursue. Accordingly, the Court finds that this claim does not rise to the level of ineffective assistance of counsel.

The state court determined that Hanney failed to show that counsel's not moving for a bench trial was deficient performance under *Strickland* based on trial counsel's credible testimony and her reasonable trial strategy that "a bench trial was inappropriate for [Hanney]'s case." Hanney fails to overcome the double deference afforded to the post-conviction court's reasonable application of *Strickland*'s deference to trial counsel's reasonable trial strategy decisions. Consequently, Ground Eleven lacks merit.

### B. **IAC During Closing**

### **Ground Twelve:**

Hanney alleges that trial counsel rendered ineffective assistance by not objecting during closing argument to comments he believes were prosecutorial misconduct. The post-conviction court summarily denied relief with the following findings and analysis (Respondent's Exhibit 27 at 10–12) (references to record omitted) (brackets original):

Defendant alleges that the State engaged in prosecutorial misconduct during closing argument, and that counsel rendered ineffective assistance of counsel by failing to object to this prosecutorial misconduct during the State's closing argument. Specifically, Defendant alleges that the Assistant State Attorney told the jury that to believe Defendant's version of events, the jury would have to believe all the State's witnesses had lied. Defendant alleges that the Assistant State Attorney improperly shifted the burden to Defendant, stating that he had to prove the State's witnesses were lying, when she made the following statements:

> "For the defendant's version of events to be true, basically everybody that testified for the State of Florida would have had to have lied. And members of the jury, that just did not happen."

> "So the chaplain is in on it, too. The conspiracy is so enormous that Defendant's facing. It's everybody at the sheriff's office. It's Audrey Mabrey. It's everybody at the Hillsborough County Fire Rescue, the paramedics, the investigators, the State Fire Marshall's Office, the guy with the dog from West Manatee, and the neighbors, too, and now it's the chaplain."

> "For this defendant to be found not guilty, you have to believe that all of those people have come in here with an agenda, because that's the only way you can believe his story. And that, ladies and gentlemen, just is not true. The chaplain did not come in here to reach the common goal of convicting Christopher Hanney."

> "She's just the next door neighbor. Why is she going to join the conspiracy? She's not."

Defendant alleges that this deficient conduct has prejudiced him from receiving a fair and impartial trial. Defendant alleges that the comments made by the Assistant State Attorney unfairly shifted the burden of proof from the State to Defendant, and that the comments improperly bolstered the State's witnesses. Defendant alleges that had counsel objected or moved for a mistrial, the outcome at trial would have been different. Defendant further alleges that the Assistant State Attorney's comments "so infected the integrity of the trial as to

undermine any reasonable confidence in the outcome." As such, Defendant requests a new trial due to prosecutorial misconduct and counsel's failure to object to such prosecutorial misconduct.

. . . .

To the extent that Defendant alleges that counsel failed to properly object to such prosecutorial misconduct, after reviewing the allegations, the court file, and the record, the Court finds that Defendant's allegations . . . are facially sufficient. However, the Court finds that Defendant is not entitled to relief as a matter of law. Under Florida law, "when it is understood from the context of the argument that the charge [of untruthfulness] is made with reference to the evidence, the prosecutor is merely submitting to the jury a conclusion that he or she is arguing can be drawn from the evidence." *Lugo v. State*, 845 So. 2d 74, 107 (Fla. 2003); *see Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987) (finding no impropriety where counsel referred to the defendant as a liar and questioned his veracity, noting that "it is understood from the context that the charge is made with reference to testimony given by the person thus characterized, [so] the prosecutor is merely submitting to the jury a conclusion that he is arguing can be drawn from the evidence"). Upon a review of the trial transcript, it is clear to the Court that each of the statements at issue are clearly commenting on the evidence, including the jury's duty to weigh Defendant's credibility as it would any other witness. As such, the Court finds that the statements are fair and proper inferences calling into question Defendant's credibility based on the evidence.

The post-conviction court determined that trial counsel's not objecting to the prosecutor's statements was not deficient performance because the statements were permissible comments on the evidence, which determination is consistent with federal precedent.  Closing argument is designed to "assist the jury in analyzing, evaluating and applying the evidence."  *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984).  *See United States v. Glover*, 335 F. App'x 35, 37 (11th Cir. 2009) (same).  While a prosecutor may not go beyond the evidence presented to the jury,

the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) ("The purpose of closing argument is to assist the jury in analyzing the evidence, and although a prosecutor may not exceed the evidence presented at trial during her closing argument, she may state conclusions drawn from the trial evidence."). Consequently, Ground Twelve lacks merit.

## C. <u>IAC Post-Trial</u>

### <u>Ground Ten:</u>

Hanney alleges that trial counsel rendered ineffective assistance by not filing a motion for new trial — despite Hanney's having told counsel not to move for a new trial — so that the judge could consider the weight of the evidence. After holding an evidentiary hearing on this claim, the post-conviction court denied relief with the following findings and analysis (Respondent's Exhibit 37 at 15–17) (references to record omitted) (brackets original):

> At the hearing, Counsel testified that in her experience, she has never had a motion for new trial granted, and describes them as "a format to guide the appellate attorney." Counsel also testified that Defendant told her "He didn't want to put [the victim] through the trial again," indicating that he had no desire to file any kind of appeal or motion for new trial. Based on her previous experience in representing defendants, Counsel filed an appeal despite Defendant's apparent desire not to. Counsel also testified that Defendant's ability to be successful on appeal was not compromised by her failure to file a motion for new trial, and that there was no legal harm to Defendant by her decision to not file a motion for new trial.

> Defendant has failed to overcome his burden. Upon review of Counsel's credible testimony, the Court finds Counsel made a reasonable strategic decision to not file a motion for a new trial after Defendant told her he did not want her to file a motion for new trial. The Court finds that even if Counsel had filed a motion for a new trial, it would not have been granted. The Court further finds that Counsel's decision to not file a motion for new trial was a strategic decision, which as Defendant's attorney, Counsel was entitled to make after Defendant expressed to her that she should not file such a motion. As such, Defendant has failed to prove Counsel acted deficiently or that Counsel's actions resulted in any prejudice.

The state court determined that Hanney failed to show that counsel's not moving for a new trial was deficient performance under *Strickland* based on trial counsel's credible testimony that Hanney told counsel not to move for a new trial. The post-conviction court's reasonable determination of no deficient performance is consistent with federal precedent. *See Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (noting that "evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims") (*en banc*).

### D. Unexhausted Grounds of IAC Under *Martinez*

As stated earlier, Hanney admittedly failed to present to the state courts five grounds of ineffective assistance of trial counsel. Each unexhausted ground is procedurally defaulted and not entitled to a review on the merits unless Hanney can meet the exception to the exhaustion requirement established by *Martinez v. Ryan*, 566 U.S. 1 (2012). This exception applies only if (1) a state requires a prisoner to raise a claim of ineffective assistance of trial counsel in an initial review collateral proceeding, (2) the prisoner failed to properly raise the ineffective assistance of trial counsel claim in his state initial review collateral proceeding, (3) the prisoner did not

have collateral counsel or his collateral counsel was ineffective, and (4) the failure to excuse the procedural default would result in the loss of a "substantial" claim of ineffective assistance of trial counsel, which claim is characterized as having "some merit." *Martinez*, 566 U.S. at 14. The first two requirements apply, and because he was represented by counsel in the post-conviction proceeding (third requirement), Hanney must show that post-conviction counsel was ineffective for not raising these unexhausted claims of ineffective assistance of trial counsel, which showing requires proof of both "deficient performance" and "prejudice" by post-conviction counsel. Moreover, to show "deficient performance," Hanney must show that no competent counsel would have omitted these unexhausted claims of ineffective assistance of trial counsel, as *Hittson v. GDCP Warden*, 759 F.3d at 1263 (italicized emphasis original), teaches:

> As we have explained, *Strickland* instructs courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" — that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 689–90, 104 S. Ct. at 2065–66. To overcome this presumption, a petitioner must "establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).

> Thus, to show that his habeas counsel failed to provide the level of representation required by *Strickland*, Hittson must show more than the mere fact they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims. Even assuming that the underlying ineffective-assistance claims are meritorious . . . Hittson has not established that his state habeas counsel were incompetent for failing to raise them.

Consequently, in addition to showing that the claims of ineffective assistance of trial counsel have "some merit," Hanney must show that "no competent counsel" would have omitted these grounds of ineffective assistance of trial counsel.

**Grounds One through Four and Thirteen:**

Hanney alleges three claims of ineffective assistance of trial counsel related to the defense of justifiable used of force. Hanney faults trial counsel (1) for not objecting to the justifiable-use-of-deadly-force instruction because the charge read to the jury both (a) denied him the presumption of reasonable fear (Ground One) and (b) authorized his use of deadly force only if he was not engaged in an unlawful activity (Ground Three) and (2) for waiving a jury instruction on justifiable use of non-deadly force (Ground Two). Also, Hanney alleges (1) that trial counsel rendered ineffective assistance by not investigating, deposing, and calling as a defense witness the victim's ex-boyfriend (Ground Four), and (2) that the cumulative effect of trial counsel's errors violated his rights to due process (Ground Thirteen).

Hanney's post-conviction counsel presented eight claims of ineffective assistance of trial counsel, just not the five grounds Hanney now raises. An attorney provides effective assistance by omitting weaker claims and advancing only the stronger claims. Although in the context of an appellate counsel, the explanation in *Johnson v. Alabama*, 256 F.3d at 1188, applies equally to a post-conviction counsel's decision on which claims to pursue:

> It is difficult to win a *Strickland* claim on the grounds that appellate counsel pressed the wrong legal arguments where the

> arguments actually pursued were reasonable in the
> circumstances. We have emphasized that even in a death
> penalty case, counsel must be "highly selective about the issues
> to be argued on appeal . . . ." *United States v. Battle*, 163 F.3d 1,
> 1 (11th Cir. 1998). The district court, having considered the
> record and [appellate counsel]'s testimony during the state
> postconviction proceeding, found that [appellate counsel] had
> carefully considered many of the claims now raised in appeal,
> but ultimately chose to pursue the claims he felt were most
> likely to prevail and winnow out the arguments he thought
> were less persuasive.

*Accord Hittson v. GDCP Warden*, 759 F.3d at 1263 ("'Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.' *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983). '[A] *per se* rule that . . . the professional advocate, [is not] allowed to decide what issues are to be pressed . . . seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation.' *Id.* at 751, 103 S. Ct. at 3313.") (brackets and ellipsis original).

Regarding Grounds One through Four, a competent post-conviction counsel would recognize the unlikelihood of success in challenging trial counsel's strategic decisions, particularly regarding jury instructions. *United States v. Carter*, 782 F. App'x 818, 822–23 (11th Cir. 2019) (recognizing that counsel's "handling of the jury instructions was 'sound trial strategy'"); *see Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("[I]t is rarer still for merit to be found in a claim that challenges a strategic decision of counsel.").

Regarding Ground Thirteen, Hanney can prove cumulative error only by showing two or more errors. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984). *See Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the applicant] received a fair trial as is [his] due under our Constitution."); *Lucas v. Warden, Georgia Diagnostic & Classification Prison*, 771 F.3d 785, 802 (11th Cir. 2014) ("We are equally unpersuaded that the cumulative effect from Lucas's *Strickland* and *Brady* claims entitles him to relief.") (citing *Conklin*). Because Hanney fails to meet *Strickland's* deficient performance and prejudice standard for any ground, Hanney shows no cumulative prejudicial effect. *See Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.").

Consequently, Hanney fails to show that "no competent counsel" would have omitted these grounds of ineffective assistance of trial counsel. Hanney's Grounds One through Four and Thirteen, reviewed under the dictates of *Martinez*, lack merit.

## V.    CONCLUSION

Hanney fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Hanney's application for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Hanney and **CLOSE** this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Hanney is not entitled to a certificate of appealability ("COA").  A prisoner seeking a writ of habeas corpus has no entitlement to appeal a district court's denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA,

Hanney must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001).  Because he fails to show that reasonable jurists would "find debatable" either the merits of the grounds or the procedural issues, Hanney is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Hanney must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 25, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE